2011 VT 42

### In re Melvin Fink, Esq.

[22 A.3d 461]

No. 10-164

Present: Dooley, Johnson, Skoglund and Burgess, JJ., and Grearson, Supr. J., Specially Assigned.

Opinion Filed April 15, 2011

*Beth DeBernardi*, Deputy Disciplinary Counsel, Burlington, for Petitioner-Appellant/Cross-Appellee.

*Melvin Fink*, Pro Se, Ludlow, Respondent-Appellee/Cross-Appellant.

¶ 1. **Johnson, J.** A panel of the Professional Responsibility Board concluded that respondent violated Vermont Rules of Professional Conduct 1.5(c) and 8.4(a) for failing to put a contingent fee agreement in writing and for attempting to charge an unreasonable fee. The panel recommended that respondent be publicly reprimanded and placed on probation. We elected to review that determination on our own motion. In this Court,

disciplinary counsel argues that respondent's actions warrant a suspension of his license. Respondent claims that he did not violate the Rules of Professional Conduct, and, alternatively, any violation warrants only a private admonition. We conclude that respondent violated both rules and agree with the panel's recommendation of a public reprimand and probation.

¶ 2. The panel found the following facts. This case stems from a complaint brought by one of respondent's former clients, who engaged respondent in 2006 to represent him in two family court matters — a relief-from-abuse proceeding instigated by his wife and a divorce action. Complainant suffered a serious and permanent injury in a trampoline accident in 2004, rendering him a quadriplegic. Soon thereafter, complainant and his wife retained an attorney from Burlington to represent them in a personal injury action, and signed a written contingent fee agreement that permitted the Burlington attorney to retain one-third of any recovery. The agreement was signed by complainant's wife on his behalf because his injury made it impossible for him to sign for himself.

¶ 3. The personal injury action was complex, involving several defendants, and the risk of no recovery was high. To assist in the litigation, the Burlington attorney solicited the help of an experienced, out-of-state lawyer with a specialty in trampoline cases. They entered into a written fee-sharing arrangement, agreeing that the consultant would receive one-third of the Burlington attorney's fee.

¶ 4. After complainant's relationship with his wife deteriorated and she filed for divorce, complainant sought respondent's help. Respondent was admitted to the Vermont Bar in 1969, and works as a sole practitioner. He handles a variety of matters, including divorce and personal injury cases. Respondent explained to complainant his regular billing practice in divorce matters, which is to charge an hourly fee and collect a retainer up front. He agreed, however, to handle complainant's case without an initial retainer based on complainant's representation that he had no money but expected a recovery in his personal injury action. Respondent reviewed his general fee agreement with complainant even though complainant was not able to sign it. Respondent was attentive to the family court matters, but has not billed complainant for his services.

¶ 5. During consultations with respondent about the divorce proceeding, complainant also discussed his personal injury case. Between June 2006 and February 2007, respondent had several conversations with complainant about the personal injury suit. Respondent facilitated communication between complainant and his Burlington attorney because respondent was much closer geographically to complainant and telephone communication was difficult for complainant. For example, as part of a settlement against one of the defendants in the personal injury action, respondent obtained complainant's signature on a "Covenant Not to Sue" by signing on complainant's behalf. Respondent was not compensated for this work.

¶ 6. Because of complainant's ongoing domestic issues, he became unhappy with the Burlington attorney representing both him and his wife in the personal injury suit and also enlisted respondent's help in asking the Burlington attorney to withdraw as his wife's attorney. In February 2007, complainant, respondent, and the Burlington attorney agreed to meet and discuss the issue. Respondent arrived at the meeting before the Burlington attorney and notified complainant that he was no longer willing to assist in the personal injury matter without compensation. The two discussed a fee and agreed that respondent would continue to assist in the personal injury matter in exchange for twelve percent of complainant's gross recovery. The parties intended this fee to cover respondent's services in the personal injury matter only; respondent would bill separately on an hourly basis for his services in the domestic matter. At that time, the personal injury claim had a potential recovery of more than two million dollars. The case, however, also involved substantial risk of no recovery.

¶ 7. The panel found that respondent believed that this percentage was warranted given the high risk of no recovery, the challenges complainant posed as a client, and the fee respondent received in a previous contingent fee case that he had worked on with the same Burlington attorney. This prior collaboration was a slip-and-fall case in which respondent had solicited the Burlington attorney's assistance. Under their agreement, respondent gave the Burlington attorney two-thirds of his already negotiated one-third contingency fee. In exchange, the Burlington attorney acted as lead counsel. Respondent assisted on the case and was involved with preparation of witnesses for trial. Based on this experience, respondent testified that he thought his role would be not only to

facilitate communication with complainant, but also to assist in preparation for trial. Respondent did not, however, discuss this expanded role with the Burlington attorney.

¶ 8. Once the Burlington attorney arrived, he was informed of the parties' agreement. The Burlington attorney did not offer respondent a substantive role in the personal injury litigation. He had no intention of involving respondent in the litigation in any manner other than to facilitate communication with complainant. His corresponding case note, which was dictated following the meeting, conveys this understanding of respondent's role in the personal injury action. It states, in relevant part,

> I met with [complainant] today, along with his divorce lawyer, [respondent] . . . .
>
> . . . .
>
> We agreed that I would communicate with [complainant] through [respondent]. The reason is because it is difficult to communicate with him by phone where he is. I was not comfortable in writing to him and have [sic] the letters floating around there. [Complainant] liked the idea of my communicating with him through [respondent].

Respondent asked the Burlington attorney to draft a letter outlining the twelve percent contingent fee agreement, but he refused. The Burlington attorney did not want to be involved because the amount made him "very uncomfortable." He did not, however, communicate his discomfort to respondent or complainant.

¶ 9. Following the Burlington attorney's refusal, respondent did not take any further action to put the agreement in writing. Respondent did not provide complainant with a written contingent fee agreement, although he had a preprinted contingent fee form he usually used for personal injury cases. Respondent testified that he did not prepare a written agreement because complainant was not able to sign documents and respondent was not aware of anyone who could sign on complainant's behalf. Respondent explained that he felt that a written document would be unenforceable, and thus useless, without the client's signature.

¶ 10. Between February and July 2007, respondent facilitated communication between complainant and the Burlington attorney. The Burlington attorney would send respondent copies of docu-

ments related to the case, and respondent would in turn review them with complainant. Respondent did not, however, enter an appearance in the personal injury matter. Respondent was unable to estimate the time he spent on the personal injury case between February and July 2007.

¶ 11. Complainant became dissatisfied with respondent's services in the divorce case and terminated his representation in July 2007. Thereafter, respondent filed a motion to withdraw in the family court case; no withdrawal was filed in the personal injury action because respondent had not entered an appearance in that matter. No one was hired to take on his communication role in the personal injury action. Respondent did not indicate whether he would seek a fee after he was fired. Fearing that respondent would do so, complainant filed a complaint against respondent.

¶ 12. Complainant's case settled for a total of $682,500. Had respondent collected his twelve percent contingent fee, he would have been paid $81,900 for facilitating communication between complainant and the Burlington attorney.

¶ 13. Respondent's case was heard before a panel of the Professional Responsibility Board on July 21, 2009. The panel chair explained that the hearing was to determine the merits of the charges and that sanctions would be dealt with in a separate proceeding, if necessary. See A.O. 9, Rule 11(D)(5)(b) (authorizing panel to bifurcate disciplinary hearing and "consider evidence relevant to the charged violations separately from evidence relevant to sanctions"). At the hearing, disciplinary counsel presented testimony from respondent, complainant, and the Burlington attorney. Respondent also testified on his own behalf and, over the objection of disciplinary counsel, presented the testimony of seven former and current clients. These clients had no knowledge of respondent's agreement with complainant, but instead stated their belief that respondent's fees were fair, well-explained, in writing, and that respondent represented them well, even if they were not able to pay his fee.

¶ 14. At the close of the evidence, the panel chair stated, "I wanted to know if counsel wants to address the sanctions criteria or not, just because we could make use of this time. I told you I would separate the issues out, but since we're wrapping up a little early, I wondered what your prerogatives were, what your requests would be?" Disciplinary counsel indicated that she would file a memorandum on the issue and the only testimony she would

solicit would be respondent's on the issue of whether he accepted responsibility for his actions. Then the following exchange took place between the chair and respondent:

> [Chair]: [Respondent], would you need a hearing with testimony if we got to the sanctions issue? Do you want to reserve on that?
>
> [Respondent]: May I?
>
> [Chair]: Yes.

¶ 15. Without further proceedings, the panel issued a decision on April 27, 2010. The panel concluded that respondent had violated Rule 1.5(c) by entering a contingent fee agreement without putting it in writing and Rules 8.4(a) and 1.5(a) by attempting to charge an unreasonable fee. As to sanctions, the panel concluded that a public reprimand was appropriate. One panel member dissented, finding no violations of the disciplinary rules. The dissenter concluded that there was insufficient evidence to demonstrate that an enforceable agreement was reached between the parties. Because there was no completed agreement within the meaning of Rule 1.5, the dissenter reasoned that respondent was not required to reduce the terms of the arrangement to writing and that there was no attempt to charge an unreasonable fee.

¶ 16. We elected to review this case on our own motion. A.O. 9, Rule 11(E). On review, we give deference to the panel's factual findings and will affirm those findings unless clearly erroneous. *Id.*; see *In re Sinnott*, 2004 VT 16, ¶ 10, 176 Vt. 596, 845 A.2d 373 (mem.). As to sanctions, we accord the panel's recommendation deference, but "this Court renders the ultimate decision." *Sinnott*, 2004 VT 16, ¶ 10.

I.

 ¶ 17. We first address the issue of whether respondent violated Rule 1.5(c) by failing to put his contingent fee agreement with complainant in writing. At the time respondent concluded his agreement with complainant, Vermont Rule of Professional Conduct 1.5(c) stated:

> A contingent fee agreement *shall be in writing* and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal,

litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.

(Emphasis added.)[1] The rule language is mandatory, directing that a contingent fee agreement "shall" be in writing, without exception. The purpose of the rule is to set forth the parties' obligations up-front to avoid later confusion or disagreement about the terms of representation or the fee due. See V.R.Pr.C. 1.5 cmt. 2 ("A written statement concerning the terms of the engagement reduces the possibility of misunderstanding."). As another court explained, "one of the principal purposes of the rules respecting contingency fee agreements is to assure that a client is fully advised at the time such agreement is executed of all of the financial obligations that such client is assuming by the establishment of the attorney client relationship." *Joyce v. Elliott*, 857 P.2d 549, 552 (Colo. App. 1993).

¶ 18. Respondent does not dispute that he failed to provide complainant with a written fee agreement,[2] but argues that it was not required in this case because complainant was physically unable to sign one. We find no merit to this argument. First, no signature was required. Although Rule 1.5(c) has since been revised and now requires that a contingent fee agreement "shall be in a writing signed by the client," V.R.Pr.C. 1.5(c) (effective Sept. 1, 2009), there was no such requirement at the time of respondent's actions. Therefore, respondent should have at the very least given complainant a written document with the terms of the parties' arrangement. Respondent claims that a writing with-

[1] The rules quoted herein are those that were in effect at the time of respondent's conduct, prior to the 2009 amendments.

[2] Before the panel, respondent agreed that he and complainant had reached an agreement and he, complainant, and the Burlington attorney all testified that he was to receive twelve percent of complainant's recovery. A dissenting member of the panel concluded that respondent did not commit professional misconduct because there was incomplete formation of a contract. Thus, the dissenter concluded that respondent had no obligation to put this unformed contract in writing or to set a reasonable fee. On appeal, respondent echoes the dissent, arguing that there was no deal and therefore his conduct was without reproach. Because respondent did not make this argument before the panel, and, in fact, conceded the issue, we do not reach it. A.O. 9, Rule 11(E) ("Arguments not advanced before the hearing panel shall not be presented to the Court, except for good cause shown.").

out the client's signature would have been unenforceable and therefore without purpose. To the contrary, putting the fee agreement in writing would have served the important purpose of providing necessary details about respondent's obligations and therefore reducing the possibility of later confusion.

¶ 19. Second, even if complainant's signature was essential, there were avenues available to obtain some kind of written approval from complainant on a written fee agreement. Another individual could have signed on complainant's behalf or signed as a witness to complainant's verbal assent. See *In re Swartz*, 686 P.2d 1236, 1239 (Ariz. 1984) (recounting how attorney properly established conservatorship and had mother and brother sign contingent fee agreement on behalf of incapacitated client). Respondent himself had signed the Covenant Not to Sue at complainant's direction and thus was obviously aware of this option. Respondent did not explore any of these possibilities. Instead, respondent made no effort to reduce his agreement with complainant to writing. This action violated Rule 1.5(c). See *Statewide Grievance Comm. v. Dixon*, 772 A.2d 160, 164 (Conn. App. Ct. 2001) (holding that prior relationship with client did not waive requirement of having a written agreement in contingent fee matter).

¶ 20. Respondent argues that there was no harm in this case because although he failed to reduce his agreement with complainant to writing, all parties were clear on the amount of the fee and, in any event, he did not attempt to collect his fee. We disagree. There was much concerning the fee agreement that was unclear to both respondent and complainant. The scope of services respondent was to perform was ill-defined. In addition, details such as the manner in which respondent's expenses were to be allocated and the fee complainant would owe if the case settled were not arrived upon. See V.R.Pr.C. 1.5(c) (requiring writing to set forth percentage of lawyer's recovery, how expenses will be allocated, and fee if case settles). Had respondent undertaken to put his agreement with complainant in writing, he would have been forced to address these issues. Thus, even if we accepted respondent's "no harm, no foul" argument, we conclude that it does not apply in this case. The purpose of the rule was not fulfilled because the parties were unclear about the exact terms of the agreement. Respondent committed professional misconduct in failing to put the contingent fee agreement in writing. See

*Statewide Grievance Comm. v. Gifford,* No. CV000800490S, 2002 WL 237821, at \*2 (Conn. Super. Ct. Jan. 23, 2002) (rejecting argument that rule not violated when no fee is collected or charged because a writing "serves the important purpose of documenting that a client does not owe attorney fees when he has not prevailed in the case").

## II.

¶ 21. Next, we turn to the panel's conclusion that respondent committed professional misconduct by attempting to charge an unreasonable fee. This charge stems from a combination of two professional conduct rules: first, Rule 8.4(a), which states that it is unprofessional conduct for a lawyer to "attempt to violate the Rules of Professional Conduct"; and second, Rule 1.5(a), which states that "A lawyer's fee shall be reasonable."[3] In tandem, disciplinary counsel asserts that a lawyer commits professional misconduct by attempting to charge a fee that is not reasonable. According to the panel, respondent's agreement to a twelve percent contingent fee for facilitating communication was such misconduct.

¶ 22. The reasonableness of the twelve percent fee depends on many factors. Under Rule 1.5(a), these are:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

---

[3] The rule was amended in 2009 and now states that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee." V.R.Pr.C. 1.5(a) (effective Sept. 1, 2009).

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

Applying these factors, the hearing panel concluded that because complainant's case required specialized legal skills and legal experience and contained a high degree of risk of no recovery, an overall high contingent fee for the legal team in complainant's case was not unreasonable. As related particularly to respondent, however, the panel concluded that his communication role did not justify such a large fee.

■ ■ ¶ 23. We discern no clear error in the panel's finding. Under the above-listed factors, respondent's agreed-upon services provided an insufficient basis for such a large percentage of complainant's recovery. Respondent's role did not require a large investment of time or labor. In addition, although he is an experienced lawyer, his tasks did not require specialized legal knowledge or legal experience. Further, facilitating communication would not preclude respondent from accepting other employment. The fee was excessive compared to the work that respondent was to perform.[4] See *Sinnott*, 2004 VT 16, ¶¶ 12-13 (concluding that evidence supported panel's conclusion that fee was unreasonable because fee was not related to the routine tasks performed); see also *In re Gerard*, 548 N.E.2d 1051, 1057 (Ill. 1989) (concluding contingent fee excessive where it involved mostly nonlegal services); *Comm. on Legal Ethics v. Gallaher*, 376 S.E.2d 346, 349-50 (W. Va. 1988) (holding that a fifty percent contingent fee was

---

[4] Respondent asserts that the panel's finding that the fee was excessive was not supported by clear and convincing evidence because there was no expert testimony to support it. Expert testimony is not required in disciplinary cases. See *Sinnott*, 2004 VT 16, ¶ 15 n.3 (expert testimony not required to meet burden showing that fee was not reasonable); see also *In re Boardman*, 2009 VT 42, ¶ 20, 186 Vt. 176, 979 A.2d 1010 (per curiam) (observing that Judicial Conduct Board does not ordinarily "require expert evidence to support its findings and conclusions" because it is comprised of lawyers and lay persons experienced in dealing with legal ethics). Expert testimony is necessary only if it helps the trier of fact to "determine a fact in issue or understand evidence that is outside the expertise or perception of the fact finder." *Sinnott*, 2004 VT 16, ¶ 15 n.3. Here, there was no such need. The communication service respondent was to perform was easily understandable. Further, there was no need for specialized training to determine that respondent's fee was disproportionate to this work.

excessive where lawyer's role was to review records and draft routine documents to settle an insurance claim).

¶ 24. Respondent attempts to distinguish his fee from other cases involving unreasonable fees on the bases that in his case his recovery was not certain, he performed useful work, and he did not ultimately bill complainant for his time and therefore caused no harm to his client. The risk of no recovery was not enough to justify respondent's fee. In addition, we have already considered the nature of respondent's work and do not find that it warranted a significant fee. Respondent's role was to facilitate communication. No extensive legal work, specialized research, or preparation of legal documents was required. We reject respondent's contention that there was no violation because he caused no harm to his client. The extent of harm caused is a factor to be considered at the sanction phase of our analysis, see *infra*, ¶ 36, but cannot excuse respondent's actions.

¶ 25. Respondent further argues that the fee was not excessive because he believed that his role would expand if the case proceeded past summary judgment. In support, respondent points to a prior case that he worked on with the Burlington attorney. The facts surrounding that collaboration were very different, however. In that case, respondent solicited the Burlington attorney's help to litigate a slip-and-fall case because the Burlington attorney had expertise in that area and respondent did not. The Burlington attorney took the lead on the case, and respondent gave him a portion of the fee he had already negotiated with the client.

¶ 26. The circumstances of respondent's entry into complainant's case and the resulting agreement differed greatly from the above facts. The Burlington attorney did not solicit respondent's help because respondent could offer unique expertise; rather, respondent joined the case at complainant's request to fill a role unconnected to any particular legal expertise. After complainant hired respondent, he did not alter the Burlington attorney's responsibilities. Further, the Burlington attorney did not have an agreement with respondent, did not ask for respondent's assistance, and did not make any arrangement for respondent to become involved in the merits of the litigation. In addition, because respondent's fee was added onto the Burlington attorney's — as opposed to a percentage of the Burlington attorney's already negotiated one-third — there was no reasonable basis for

respondent to conclude that he would be assuming any of the Burlington attorney's workload. Moreover, other facts demonstrate the narrow scope of respondent's role. The only matter discussed at the meeting was respondent's communication role. Respondent did not enter an appearance in the personal injury action, signifying that he did not expect to be filing any court documents on complainant's behalf. Thus, regardless of respondent's subjective understanding, at the time he entered the agreement, there was no objective basis for respondent to think that he would contribute to the case in any manner other than that specified at the meeting: facilitating communication between complainant and the Burlington attorney.

¶ 27. Respondent also argues that he should not be disciplined because he did not attempt to collect a fee and the reasonableness of the fee can be measured only when the litigation has ended. Respondent contends that only at this point can an assessment be made of whether an attorney's remuneration is commensurate with the work performed. As related to his own work, respondent hypothesizes that his role would have expanded once trial preparation began, and if it did not he could have reduced his fee before billing complainant. Respondent contends that because complainant terminated him he did not have the opportunity to demonstrate either of these possibilities and should not be punished for something that did not occur.

¶ 28. Respondent's argument reflects a misunderstanding of his obligations under the rules. Respondent made a deal to receive twelve percent of complainant's recovery, and at the time the only discussed role for respondent was as a communication facilitator. Rather than setting a high fee based on an unvoiced expectation of additional work that might arise and adjusting the fee downwards if it did not, respondent was required to initially set a fee which fairly reflected that amount of work he *did* agree to perform. This is the only manner in which a client's interest can be protected. The fee must be set forth in advance so that a client can make an initial informed decision about the attorney's representation. If, at some point in the future, respondent's role had enlarged, then he could have sought additional compensation. Respondent is held accountable for the deal he made, not the one he supposed might be made in the future.

¶ 29. In addition, it is irrelevant that respondent did not actually bill complainant for the twelve percent contingent fee. In

contracting with complainant for twelve percent of complainant's recovery, respondent attempted to violate the directive that lawyers charge a reasonable fee set forth in Rule 1.5(a). This is a violation of Rule 8.4(a). See *Lawyer Disciplinary Bd. v. Duty*, 671 S.E.2d 763, 770 (W. Va. 2008) (concluding that lawyer's attempt to withhold $3500 in undocumented expenses violated Rules 1.5(a) and 8.4(a) even though amount was not ultimately withheld); *Lawyer Disciplinary Bd. v. Ball*, 633 S.E.2d 241, 248 (W. Va. 2006) (concluding that lawyer violated rules of professional conduct for agreeing to an excessive fee, even though he did not actually receive the fee). Therefore, we conclude that respondent violated Rules 1.5(a) and 8.4(a) by attempting to charge an excessive fee.

## III.

¶ 30. Having affirmed the violations, we turn to the question of sanctions. As a threshold matter, respondent contends that the panel denied him due process because it indicated that it would bifurcate the violation and sanction determinations but instead issued a decision on both without a separate sanctions hearing. Disciplinary counsel argues that no additional hearing is warranted because respondent has failed to proffer what "additional, relevant, substantive testimony" he would present upon remand.

¶ 31. Disciplinary proceedings in Vermont are neither civil nor criminal, but basic due process rights are accorded to attorneys. *In re Berk*, 157 Vt. 524, 528, 602 A.2d 946, 948 (1991). Thus, an accused attorney has the right to "be given a full opportunity to explain the circumstances of an alleged offense and to offer testimony in mitigation regarding any possible sanction." *Fla. Bar v. Baker*, 810 So. 2d 876, 879 (Fla. 2002). At the same time, however, "a respondent's due process rights must be carefully balanced against the importance of the public interest in expeditiously resolving complaints of misconduct." *Disciplinary Counsel v. Heiland*, 2008-Ohio-91, ¶ 32, 880 N.E.2d 467.

¶ 32. We conclude that resolution without a remand will not violate respondent's due process rights because respondent already presented significant evidence relative to sanctions and has failed to proffer what additional noncumulative evidence he would present at a second hearing. See *Fla. Bar v. Tobkin*, 944 So. 2d 219, 226 (Fla. 2006) (holding that there was no due process

violation where respondent was given an opportunity to "explain the circumstances of the alleged offenses and to offer testimony in mitigation of any penalty to be imposed"). Respondent personally testified concerning mitigating factors such as his willingness to represent clients who may not have the ability to pay his fee. In addition, respondent presented the testimony of seven former or current clients, who had no knowledge of the charges but were character witnesses for respondent. Moreover, in his brief, respondent offers no specific additional evidence that he would present at a second hearing, and at oral argument, respondent simply claimed that he would like to provide testimony on sanctions and offer witnesses to rebut the panel's finding that he had a selfish motive.

¶ 33. Although we agree with respondent that the panel should have fulfilled its promise of a bifurcated proceeding, we conclude it is unnecessary to delay this proceeding further with another hearing on respondent's service to the community. This evidence is cumulative to that previously offered and would not add anything to our analysis. See *In re Balsamo*, 780 A.2d 255, 258 (D.C. 2001) (concluding accused attorney's due process rights were not violated by denial of opportunity to present new evidence because it was not likely that this evidence "would have added substantially to the evidence already introduced"). Further, as explained below, the sanction imposed on respondent is light and cannot be mitigated further in light of the numerous aggravating factors. See, *infra*, ¶ 44. Therefore, respondent is not prejudiced by the lack of another hearing.

¶ 34. In its decision, the hearing panel recommended that respondent receive a public reprimand. Disciplinary counsel argues that respondent's actions were serious and done with a knowing state of mind, and thus warrant a term of suspension. Respondent claims that at most he should be privately admonished because any violation was not done intentionally, and no harm resulted.

¶ 35. The American Bar Association's Standards for Imposing Lawyer Sanctions guide our sanctions determination. ABA Ctr. for Prof'l Responsibility, *Standards for Imposing Lawyer Sanctions* (1986) (amended 1992) [hereinafter ABA Standards]; see *In re Neisner*, 2010 VT 102, ¶ 14, 189 Vt. 145, 16 A.3d 587 (employing ABA Standards). Under this construct, we consider: "(a) the duty violated; (b) the lawyer's mental state; and (c) the actual or

potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." ABA Standards, *supra*, § 3.0, at 26. Depending on the importance of the duty violated, the level of the attorney's culpability, and the extent of the harm caused, the standards provide a presumptive sanction. See V.R.Pr.C., Scope (explaining that severity of sanction "depend[s] on all the circumstances, such as the willfulness and seriousness of the violation, extenuating factors and whether there have been previous violations"). This presumptive sanction can then be altered depending on the existence of aggravating or mitigating factors. In arriving at an ultimate sanction, we are mindful that the purpose of sanctions is not "to punish attorneys, but rather to protect the public from harm and to maintain confidence in our legal institutions by deterring future misconduct." *In re Hunter*, 167 Vt. 219, 226, 704 A.2d 1154, 1158 (1997).

¶ 36. In this case, the duty owed is not disputed. Respondent violated duties that he owed as a professional — to put a contingent fee agreement in writing and to charge a reasonable fee for his services. As for injury, there was no actual injury to complainant because respondent did not attempt to collect his fee. Contrary to respondent's assertions, however, there was the potential for injury to complainant had respondent not been dismissed from the case and billed for his twelve percent fee. In addition, there was injury to the public at large and the legal profession because lack of written contingent agreements and excessive fees feed public distrust of lawyers and decrease public confidence in the profession. *In re Farrar*, 2008 VT 31, ¶ 8, 183 Vt. 592, 949 A.2d 438 (mem.) (considering harm to public and profession in addressing sanctions); see *In re Fasig*, 444 N.E.2d 849, 850 (Ind. 1983) (concluding that attorney's agreement to charge contingent fee in a criminal matter "demean[ed] the entire legal profession"); see also V.R.Pr.C., Preamble (explaining that "a lawyer should further the public's understanding of and confidence in the rule of law and the justice system").

¶ 37. The main area of dispute between the parties is respondent's mental state. The ABA Standards define three levels of culpability for purposes of sanctions. The most culpable mental state is intent, which is defined as acting with "the conscious objective or purpose to accomplish a particular result." ABA Standards, *supra*, Definitions at 9. Knowledge — the next most culpable mental state — is a "conscious awareness of the nature

or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." *Id.* Finally, the least culpable mental state is negligence, which is when a lawyer fails "to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." *Id.*

¶ 38. Under these definitions, the distinguishing factor between negligent and knowing conduct is whether a lawyer had a conscious awareness of the conduct underlying the violation or whether he failed to heed a substantial risk that a violation would result from his conduct. In other words, was the lawyer aware of the circumstances that formed the basis for the violation? If so, the conduct was done knowingly. If the lawyer instead acted without awareness, but below the accepted standard of care, then he acted negligently. Application of these definitions is fact-dependent. As another court observed, "[t]he line between negligent acts and acts with knowledge can be fine and difficult to discern, yet the difference between the presumptive sanction of reprimand or suspension is great." *In re Stansfield*, 187 P.3d 254, 262 (Wash. 2008). Precisely because this line is difficult to discern and involves factual determinations, we give deference to the panel's assessment of an attorney's mental state. See *In re Van Dox*, 152 P.3d 1183, 1187 (Ariz. 2007) ("State of mind is a fact question."); *In re Preszler*, 232 P.3d 1118, 1127 (Wash. 2010) (noting that mental state is a factual question and therefore factfinder's determination is given great weight).

¶ 39. In this case, the hearing panel concluded that respondent's failure to put his contingent fee in writing was done knowingly, but his attempt to charge an unreasonable fee was done negligently. Disciplinary counsel argues that respondent's actions were knowing violations of the duties he owed as a professional in both instances, while respondent claims that at the most his actions were done negligently because he had no intent to commit any wrongdoing and no selfish motive. We consider the violations in turn. As to the written agreement, the panel found that respondent's failure to put the contingent fee in writing was done knowingly because he was aware of the nature and circumstances of his actions that formed the basis for the violation. In other words, he knew that having a written agreement was a

requirement of the rules and that he did not have one with complainant. These findings are supported by the evidence. See *In re Hongisto*, 2010 VT 51, ¶¶ 10-11, 188 Vt. 553, 998 A.2d 1065 (mem.) (panel's findings will be affirmed unless clearly erroneous). Respondent does not really dispute that he understood the general obligation to put a contingent fee agreement in writing. Respondent had done so in the past using a set form. His knowledge of this obligation is further indicated by his request that the Burlington attorney draft a letter memorializing the agreement with complainant.

¶ 40. Regarding the second violation, disciplinary counsel argues that respondent acted knowingly because he knew that his twelve percent fee agreement was unreasonable and he did it to obtain a substantial personal benefit. The panel found differently. The panel found that respondent acted negligently because he failed to consider the nature or extent of the service he was providing in exchange for the fee charged. The facts support the panel's finding that respondent, however erroneously, believed that he would contribute to a greater degree to complainant's case. Because he was not consciously aware that he would do very little work for a large fee, his actions were negligent. Cf. *In re Preszler*, 232 P.3d at 1127-28 (explaining that attorney knowingly charged excessive fee because he knew he did very little work for a substantial fee).

¶ 41. It bears emphasizing that this standard is relevant for the mental state determination relative to sanctions only. As discussed in the merits portion of this opinion, *supra*, ¶ 26, respondent's subjective belief regarding the extent of services he was to provide cannot excuse the violation because all of the objective facts demonstrated that respondent's role was limited to communication. In the context of sanctions, however, knowing conduct does not encompass both knew or should have known. If the definition extended to constructive knowledge then "no misconduct would be negligent because rather than failing to heed a substantial risk we would always assume the lawyer should have known the substantial risk." *In re Stansfield*, 187 P.3d at 263. Thus, while a lawyer's good faith, but unreasonable, belief that his actions are not misconduct is not a defense to a violation, such an error can be a factor in imposing discipline. See *In re PRB Docket No. 2007-046*, 2009 VT 115, ¶ 23, 187 Vt. 35, 989 A.2d 523

(considering that lawyers acted in good faith in arriving at appropriate discipline); see also *La. State Bar Ass'n v. Marinello*, 523 So. 2d 838, 842-43 (La. 1988) (noting that ignorance of disciplinary rules is no excuse, but lack of intent to commit wrongdoing was mitigating factor); N. Moore, *Mens Rea Standards in Lawyer Disciplinary Codes*, 23 Geo. J. Legal Ethics 1, 52 (2010) (explaining that lawyer's mistake of law is not an excuse to disciplinary violation, but courts consider whether lawyer acted in good faith in fashioning sanction).

¶ 42. That respondent's conduct is most appropriately characterized as negligent in this case is further confirmed by the commentary in the ABA Standards, which explains that knowing violations generally occur when a lawyer "engages in a pattern of charging excessive or improper fees." ABA Standards, *supra*, § 7.2 cmt., at 47. The panel found it significant in this case that respondent's conduct was an isolated incident and "the evidence does not show a pattern of excessive fees."

¶ 43. In sum, respondent knowingly and negligently violated duties owed as a professional, which resulted in actual injury to the public and potential injury to the client. Under the ABA Standards, a knowing violation of a duty owed as a professional deserves a presumptive sanction of suspension, *id.* § 7.2, at 46, while "[r]eprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system." *Id.* § 7.3, at 47.

¶ 44. The panel found the following aggravating factors: (1) respondent's substantial experience as a lawyer; (2) respondent's prior discipline for charging an excessive fee; (3) respondent's selfish motive; (4) respondent's refusal to acknowledge the wrongful nature of his conduct, and (5) the vulnerability of complainant. See *id.* § 9.22, at 50 (listing aggravating factors). Of these, the panel concluded that the most troubling were the vulnerability of complainant because this made him "particularly dependent," and respondent's substantial experience in the practice of law. The panel did not give significant weight to respondent's prior public censure in 1987 for charging an excessive fee because this violation was remote. See *id.* § 9.32(m), at 51 (recognizing remoteness of prior offense as mitigating factor). Respondent challenges some of the aggravating factors, arguing that he had no selfish

motive, and that it is unfair to consider his refusal to acknowledge the wrongfulness of his conduct because he has a right to defend himself. The panel did not enumerate any mitigating factors, but respondent urges us to consider his reputation of providing representation to clients of limited financial means. *Id.* § 9.32(g), at 51 (listing "character or reputation" as mitigating factor).

¶ 45. Recalling that the presumptive sanction in this case is either suspension or reprimand, on balance, we agree with the panel that a reprimand is most appropriate in this case. As the ABA Standards state: "Courts typically impose reprimands when lawyers engage in a single instance of charging an excessive or improper fee." *Id.* § 7.3, cmt., at 47. We agree with the panel that the vulnerability of complainant makes respondent's actions particularly egregious, and respondent's extensive experience in the practice of law is an aggravating factor. We also concur that respondent's prior discipline bears little on the current sanction given its remoteness. As to respondent's challenge to consideration of his selfish motive and lack of remorse, we do not reach these arguments because we conclude that even ignoring these two aggravating factors, the sanction of a public reprimand is appropriate. Similarly, even if we considered respondent's reputation for conscientious service to clients of limited financial means as a mitigating factor, this would not outweigh the extensive aggravating factors.

¶ 46. Finally, we briefly address respondent's request to reduce the severity of the sanction imposed against him as a penalty against the hearing panel for taking more than sixty days to render a decision. See A.O. 9, Rule 11(D)(5)(c) (requiring hearing panel to issue case within sixty days of hearing). Respondent's request lacks merit. The time line in Rule 11 is directory; there is no enumerated penalty for failure to issue a decision within sixty days. *Id.*, Rule 16(I) (explaining that while failure to abide by timelines "may result in sanctions against the violator," they are directory). Furthermore, no consequence for issuing a late decision is necessary without demonstration of prejudice, *In re Neisner*, 2010 VT 102, ¶¶ 28-30, and here, respondent has claimed none.

*Melvin Fink is publicly reprimanded for violating Rules 1.5(c) and 8.4(a) of the Vermont Rules of Professional Conduct by failing to*

*put a contingent fee in writing and attempting to charge an unreasonable fee. He is placed on probation pursuant to the terms and conditions set forth in the panel's decision.*