2015 VT 57

## In re PRB Docket No. 2012.155

[121 A.3d 675]

No. 14-082

Present: **Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Durkin, Supr. J., Specially Assigned**

Opinion Filed April 3, 2015

144

*Beth DeBernardi*, Disciplinary Counsel, Burlington, for Petitioner-Appellant.

*P. Scott McGee*, Norwich, for Respondent-Appellee.

¶ 1. **Per Curiam.** Office of Disciplinary Counsel appeals the determination of the Hearing Panel of the Professional Responsibility Board that attorney should receive a private admonition sanction for violating Vermont Rule of Professional Conduct 1.15 by commingling personal and client funds in his client trust account. We affirm.

¶ 2. The parties stipulated to the following facts. Attorney was admitted to the Vermont bar in 1983. He worked as a solo practitioner and independent contractor until 1986, at which time he signed on as an associate with another law firm. In 1997, he again established his own private practice. At that time, he opened an Interest on Lawyer Trust Account (IOLTA), which he presently still maintains. Attorney uses this client trust account for real estate transactions and in connection with his estate and disability work. Attorney employs secretaries, social workers, paralegals, and associates, and he contracts with an independent bookkeeping service.

¶ 3. In 2011, attorney randomly was selected to complete an IOLTA account survey. While responding to the survey, he realized that he had been violating the rules by using his IOLTA account to escrow funds that were not directly client related. Attorney retained an independent certified public accountant (CPA) who reviewed all his IOLTA account transactions going back to 1997 to identify any other irregularities. The CPA's review was "comprehensive and exhaustive" and included review of "all deposits and withdrawals and all transactions." He concluded that all of the client funds were accounted for. After review, attorney self-reported all violations to Disciplinary Counsel. In addition to retaining a CPA, attorney retained the assistance of legal counsel. He also purchased bank records and probate court records to confirm information that had been lost in a flood.

¶ 4. Attorney reported three categories of IOLTA violations. First, attorney commingled personal and client funds by creating subaccounts within his IOLTA trust account in which he deposited personal funds. Attorney deposited these funds in escrow to be used later to pay liabilities owed to third parties, but the funds were labeled as attorney's personal funds while in the account. The funds were deposited separately into easily identifiable IOLTA subaccounts, and attorney maintained a separate ledger to

ensure that he would not confuse the client and personal funds. Attorney discontinued these accounts once he realized their use was improper.

¶ 5. With respect to commingling personal and client funds, the parties stipulated that attorney's mental state was one of negligence; he did not knowingly or intentionally violate the rules. He mistakenly believed that creating separate escrow accounts was permitted, if not required, under the rules, as long as the accounts were segregated and labeled for specific purposes. His conduct resulted in no actual injury to his clients.

¶ 6. Second, bookkeeping errors resulted in funds being overdrawn from several of the IOLTA subaccounts. Attorney attributed these errors to his or his bookkeeper's failure to enter the correct inclusive date when issuing a check to close out an account. This resulted in higher balances than actually existed. As soon as each error was discovered, the bookkeeper deposited funds sufficient to bring the accounts in good standing. No overdraft notices were ever issued.

¶ 7. With respect to the overdrawn subaccounts, the parties stipulated that attorney's mental state was one of negligence. The errors were due to poor bookkeeping and inadequate oversight practices. His conduct resulted in no actual injury but had the potential to cause injury because some client funds were used to cover the negative balances.

¶ 8. Third, residual funds remained in several client subaccounts when matters were closed by other associates or when associates left the firm. Most of these funds were fees payable to attorney or funds earmarked for bank charges that never were debited from the subaccount. Some of these funds were payable to clients or third parties. Attorney since has closed the dormant accounts by making the necessary payments. Attorney has, with the assistance of his CPA, established additional checks and reconciliation protocols to avoid future errors.

¶ 9. With respect to surpluses in subaccounts, the parties stipulated that attorney's mental state was one of negligence. Again, these were errors due to poor bookkeeping and inadequate oversight practices. A small number of clients suffered minor injury due to the delay in receiving these funds.

¶ 10. Attorney appeared before the hearing panel. After considering the parties' stipulations and arguments, the panel ordered that attorney be privately admonished for violating Rule 1.15(a)(1)

by commingling personal and client funds; Rule 1.15(b) by depositing his own money in excess of that required for bank fees; and Rule 1.15(f)(2) by using money held in trust for one client to carry out business for another client without that client's permission. The hearing panel considered attorney's mental state of negligence in concluding that public reprimand was the presumptive sanction, but reduced the sanction to private admonition based on several mitigating factors, including attorney's good standing, good faith effort to cure violations, full disclosure and cooperative attitude, and remorse. Disciplinary Counsel filed this appeal.

¶ 11. ██ We uphold the hearing panel's findings of fact and mixed conclusions of law and fact if they are "clearly and reasonably supported by the evidence" and not clearly erroneous. *In re Neisner*, 2010 VT 102, ¶ 12, 189 Vt. 145, 16 A.3d 587 (quotation omitted). Although we grant deference to the panel's recommendations on sanctions, we ultimately determine the appropriate disciplinary measure. *Id.*

¶ 12. The sole issue on appeal is whether private admonition is the appropriate sanction for attorney's misconduct. Disciplinary Counsel contends that suspension is the presumptive sanction and that the mitigating factors should reduce the sanction from suspension to public reprimand. Disciplinary Counsel emphasizes the serious nature of the violations, the potential harm to clients, and the fact that attorney should have known his actions were violating the rules. We disagree and conclude that the hearing panel was correct in ordering private admonition.

¶ 13. ██ We have adopted the American Bar Association (ABA) Standards for Imposing Lawyer Discipline, *In re Andres*, 2004 VT 71, ¶ 14, 177 Vt. 511, 857 A.2d 803 (mem.), which sets forth four factors to consider when determining an appropriate sanction in a disciplinary proceeding: (1) the duty violated; (2) the lawyer's mental state; (3) actual or potential injury caused by the misconduct; and (4) aggravating or mitigating factors. ABA Ctr. for Prof'l Responsibility, Standards for Imposing Lawyer Sanctions § 3.0 (1986) (amended 1992) [hereinafter ABA Standards].

¶ 14. ██ Four possible sanctions are appropriate for attorneys who mishandle client funds. *Id.* § 4.1. Suspension is the presumptive sanction "when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." *Id.* § 4.12. Reprimand is the presump-

tive sanction "when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client." *Id.* § 4.13. The presumptive sanctions, however, may be increased or reduced based on a weighing of aggravating and mitigating factors. *Id.* §§ 9.2-9.3. In the context of sanctions, "knowledge" is defined as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." *Id.* at xxi. "Negligence" is defined as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." *Id.*

¶ 15. The primary dispute here centers around the starting point for discipline: suspension or public reprimand. As noted above, § 4.12 requires knowledge on the part of the attorney, while § 4.13 requires only negligence, but the distinction is blurred because § 4.12 applies when an attorney either "knows or should know" his conduct violates the rules. The hearing panel applied § 4.13 based on the parties' stipulation that attorney's mental state merely was negligent. Despite this stipulation, Disciplinary Counsel argues that the language "should know" as used in § 4.12 applies here because all attorneys *should know* the rules, particularly those governing client trust accounts.

¶ 16. Disciplinary Counsel relies on our decision in *In re Farrar*, 2008 VT 31, 183 Vt. 592, 949 A.2d 438 (mem.), to support its argument. The facts of *Farrar* are strikingly similar to those of the present case: in responding to a random survey, the attorney discovered he had been commingling funds in violation of Rule 1.15, which he fully disclosed. The hearing panel ordered private admonition, but on review we concluded that public reprimand was the appropriate sanction. 2008 VT 31, ¶¶ 1-2. We agreed with the panel that the presumptive sanction was suspension, given the seriousness of the offense and the fact that the attorney "should have known that his handling of his trust account" violated the rules. *Id.* ¶ 11. We disagreed, however, with the panel's decision to reduce the sanction from suspension to private admonition based on mitigating factors that included the attorney's cooperation with the proceeding, remorse, and lack of dishonest intent. *Id.* ¶¶ 9-10, 12. We emphasized that "[t]he prohibition against lawyers commingling private monies with client funds is a fundamental precept" and "mistake about the applicability of an ethical rule

cannot excuse or even mitigate misconduct when the lawyer has violated a rule fundamental to governance of the legal profession." *Id.* ¶ 10 (quotation omitted).

¶ 17. At oral argument, Disciplinary Counsel discussed the difference between negligence and knowledge in handling client property. According to Disciplinary Counsel, a negligent action can be characterized as bookkeeping or other technical errors; the attorney understood the rules but nonetheless made a careless mistake. An action where the attorney *should have known* he was violating the rules, according to Disciplinary Counsel, would involve a situation where the attorney either did not know the rules or did not understand that his conduct violated the rules.

¶ 18. ▉ This echoes our analysis in *In re Fink*, 2011 VT 42, 189 Vt. 470, 22 A.3d 461, where we discussed the line between negligent and knowing states of mind. *Id.* ¶ 38. We stated that "the distinguishing factor between negligent and knowing conduct is whether a lawyer had a conscious awareness of the conduct underlying the violation or whether he failed to heed a substantial risk that a violation would result from his conduct." *Id.* We acknowledged that a fine line exists between negligent and knowing acts, yet the difference between public reprimand and private admonition is great. *Id.* We concluded that because this line is so difficult to discern and the distinction is highly fact-based, we should accord great weight to the hearing panel's determination on the attorney's state of mind. *Id.*

¶ 19. Here, Disciplinary Counsel argues that, despite the parties' stipulations, attorney's state of mind is a question of law. Attorney's state of mind is indeed a question of fact, as we noted in *Fink*. The parties stipulated that attorney was fully cognizant of the rules but nonetheless believed his conduct was appropriate. But whether such a misunderstanding of the rules is knowing rather than negligent is a question of law. Thus, the question is whether suspension is the presumptive sanction when the attorney *should have known* his conduct violated the rules. As stated above, *supra*, ¶ 11, we review these mixed questions of fact and law for clear error.

¶ 20. The hearing panel concluded that, based on the language in the definition section of the ABA Standards, which does not include the term "should know," the presumptive sanction for attorneys who do not have conscious knowledge is public repri-

mand. The panel stated that it "expect[s] that all lawyers *should know* the rules, but [it does] not impose serious discipline such as suspension for that fact alone," and concluded that it does not "believe that suspension is an appropriate starting point for discipline given that the parties have agreed that we are dealing here with negligent behavior."

¶ 21. ██ We agree with the hearing panel, particularly given this fine line between mental states and the seriousness of imposing suspension or public reprimand over private admonition. Although we treat violations of trust account rules seriously, the ABA Standards provide no indication that client trust account violations are subject to a different analysis. And we decline to conclude that any time an attorney *should have known* his conduct violated the rules, because he is charged with comprehensive knowledge of the content of those rules, that he presumptively will be suspended. In *Fink*, we differentiated between mental states in defending against violations and mental states as applied to sanctions. 2011 VT 42, ¶ 41. We stated that "knowing conduct does not encompass both knew or should have known" because "[i]f the definition extended to constructive knowledge then no misconduct would be negligent." *Id.* (quotation omitted). We explained that "while a lawyer's good faith, but unreasonable, belief that his actions are not misconduct is not a defense to a violation, such an error can be a factor in imposing discipline." *Id.* We agree that under the *Fink* analysis the presumptive sanction in this case is a public reprimand.

¶ 22. ██ In reaching this conclusion, we also note that the potential injury to the client is less severe than in *Farrar*. Although any mishandling of client property is serious, we consider that attorney took pains *not* to commingle funds by creating separate subaccounts for distinct purposes and keeping careful, detailed records of each· account to ensure no client funds were confused with his personal funds. In *Farrar*, on the other hand, the attorney's bookkeeper transferred money back and forth between the business and client trust accounts, directly commingling the funds. 2008 VT 31, ¶ 3. The potential that client funds would be used for nonclient related purposes was far greater there than here. Based on attorney's mental state, the lack of actual injury, and the low potential for injury, we conclude that public reprimand is the presumptive sanction.

¶ 23. ■ With public reprimand the starting point, we consider whether the mitigating factors reduce the appropriate sanction from public reprimand down to private admonition. As Disciplinary Counsel recognized, attorney took additional affirmative steps in hiring a CPA at his own expense, ordering bank and court records, and diligently tracking every irregularity going back to the opening of his IOLTA account in 1997. His personal investigation far exceeded that of Disciplinary Counsel, resulting in details of violations and irregularities that Disciplinary Counsel would not have uncovered. He disclosed far more information than was required, including several bookkeeping errors and other irregularities that already had been remedied. Attorney's extensive efforts go beyond what was required of him and weigh heavily in our consideration of mitigating factors.

¶ 24. We also add to the scale several other mitigating factors stipulated to by the parties: absence of a prior disciplinary record, lack of selfish or dishonest motive, presence of personal problems, positive character and reputation, presence of physical disability, and remorse. The only aggravating factor is attorney's thirty years of experience. The weight of the mitigating factors over the aggravating factors is far greater than in *Farrar*, 2008 VT 31, ¶ 12, and merits a reduction in sanction.

¶ 25. We therefore conclude that public reprimand is the presumptive sanction and that mitigating factors reduce the appropriate sanction to private admonition.

*Affirmed.*

¶ 26. **Robinson, J.,** concurring. While the commingling of an attorney's personal funds with clients' funds is almost always impermissible under our ethical rules, see V.R.Pr.C. 1.15, the commingling at issue here was as benign as commingling can be. Although attorney placed personal funds in subaccounts within his client trust account, those accounts were separately labeled as attorney's personal funds, the funds were deposited separately into these accounts, and attorney maintained a separate ledger to ensure that he would not confuse client and personal funds. Attorney made an honest mistake in believing that keeping separate personal "escrow" accounts within his account was permitted. Upon learning that his understanding was mistaken, attorney arranged for a wide-ranging, extensive audit, and he self-reported more than Disciplinary Counsel would have sought to

uncover. For all of these reasons, the end point of the hearing panel's, and now the majority's, analysis is reasonable and appropriate, and for reasons set forth below, I concur in the result.

¶ 27. I write separately because I believe the path to that result chosen by the hearing panel and endorsed by the majority confuses the applicable law and sets a dangerous precedent for future cases involving improper handling of client property.[1] In determining the presumptive sanction, before considering aggravating and mitigating factors, the majority rightly focuses on the distinction between § 4.12 and § 4.13 of the American Bar Association (ABA) Standards for Imposing Lawyer Discipline. ABA Ctr. for Prof'l Responsibility, Standards for Imposing Lawyer Sanctions (1986) (amended 1992) [hereinafter ABA Standards]. The former describes the presumptive sanction "when a lawyer knows or should know that [he or she] is dealing improperly with client property and causes injury or potential injury to a client." *Id.* § 4.12. The latter describes the presumptive sanction "when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client." *Id.* § 4.13. The majority asserts that the line between these standards is blurred because the former section applies when an attorney either knows or "should know" that his or her conduct violates the rules. *Ante,* ¶ 15. I believe these sections are clear and distinct, and that the majority, not the ABA, has created confusion with respect to the application of these standards. The reasoning embraced by the majority is, essentially, that if a lawyer knowingly takes actions that constitute commingling of personal and client funds, but does not actually know that his or her actions violate the rules, then the lesser presumptive sanction for negligent conduct may apply. I gather the theory is that "should know" is a concept that sounds in negligence.

¶ 28. The problems with this approach are manifold. First, it completely reads the phrase "or should know" out of § 4.12. The majority's suggestion that the presumptive sanction of suspension only applies when a lawyer actually knows that he or she is dealing improperly with client property is at odds with the plain language of the standards. The commentary to the ABA Stan-

---

[1] I agree completely with the majority's analysis with respect to the bookkeeping errors and overdrawn subaccounts. I depart from the majority's analysis only with respect to the commingling of client and personal funds.

dards makes this point even clearer. The commentary to § 4.12 states that suspension should be reserved "for lawyers who engage in misconduct that does not amount to [knowing] misappropriation or conversion" and that "[t]he most common cases involve lawyers who commingle client funds with their own, or fail to remit client funds promptly." By contrast, the commentary to § 4.13 of the ABA Standards explains that "reprimand is appropriate for lawyers who simply fail to follow their established procedures. Reprimand is also appropriate when a lawyer is negligent in training or supervising his or her office staff concerning proper procedures in handling client funds." This description applies squarely to the bookkeeping errors and overdrawn subaccounts for which attorney in this case was sanctioned, both of which resulted from a negligent failure to follow established procedures. But it does not describe the class of violations involving an attorney knowingly following practices that, although attorney did not realize it, amount to improper commingling under the rules.

¶ 29. Second, this approach departs significantly from our own case law. In *In re Farrar*, we considered a case in which a lawyer had his bookkeeper regularly transfer $200 from the lawyer's business account to the trust account as a sort of savings plan for the lawyer. 2008 VT 31, ¶¶ 2-3, 183 Vt. 592, 949 A.2d 438 (mem.). The bookkeeper reconciled the trust account on a monthly basis; the lawyer's money was never used to counteract a deficit in the client trust account; the lawyer's clients never suffered actual harm; and the lawyer had no selfish or dishonest motive. *Id.* The hearing panel recommended a private admonition and placed the lawyer on probation with the condition that he write an article for the *Vermont Bar Journal* about proper trust-account management. *Id.* ¶ 4. This Court, reviewing the hearing panel's recommendation on its own motion, rejected the private admonition as inappropriately lenient. In determining the presumptive sanction, this Court wrote:

> [R]espondent's practice of putting his own money in his client trust account violated his duty to his clients to preserve their property. Respondent had full knowledge of his bookkeeper's regular practice of putting nonclient funds into his client trust account, and respondent continued this practice for many years. Respondent should have known that his handling of his trust account was in

violation of his professional responsibilities. As explained, respondent's actions did not actually harm his clients, but there was the potential for injury. Under these circumstances, . . . the presumptive sanction . . . is suspension.

*Id.* ¶ 11. Considering the mitigating factors, this Court imposed the sanction of public reprimand, rather than suspension. We specifically rejected the lawyer's argument that the lawyer should not be subject to more than a private admonition because he made an honest mistake and did not cause any injury. We explained:

> [W]hile recognizing that respondent did not act selfishly, we will not minimize his infraction merely because he was unaware that his acts violated the rules of professional conduct. "If a failure to understand the most central Rules of Professional Conduct could be an acceptable defense for a charged violation, even in cases of good faith mistake, the public's confidence in the bar, and more importantly, the public's protection against lawyer overreaching would diminish considerably." The prohibition against lawyers commingling private monies with client funds is a fundamental precept. "[M]istake about the applicability of an ethical rule cannot excuse or even mitigate misconduct when the lawyer has violated a rule fundamental to governance of the legal profession."

*Id.* ¶ 10 (citation omitted) (quoting *In re Smith*, 817 A.2d 196, 202 (D.C. 2003)).

¶ 30. The majority tries to distinguish *Farrar* by suggesting that the potential for injury to clients here was less severe than in *Farrar*. *Ante*, ¶ 22. But the majority ignores *Farrar*'s express holding that *suspension* is the presumptive sanction under the ABA Standards for knowing conduct that amounts to commingling, even if the lawyer did not realize that the bookkeeping practice violated the ethical rule. The majority also makes no attempt to reconcile its holding with this Court's recognition in *Farrar* that a "mistake about the applicability of an ethical rule cannot excuse or even mitigate misconduct." The majority's holding in this case contradicts our decision in *Farrar* on these points.

¶ 31. Although *Farrar* squarely addresses the presumptive sanction for commingling personal and client property under the ABA

Standards, the majority instead relies on the analysis in *In re Fink*, which deals only obliquely with the issue before us in this case. 2011 VT 42, 189 Vt. 470, 22 A.3d 461. In *Fink*, we concluded that the evidence supported the hearing panel's finding that the lawyer knew he was supposed to put a contingent fee in writing and knew he had not done so. *Id.* ¶ 39. As a result, we agreed that this violation was knowing. *Id.* But with respect to another violation, the charging of an excessive fee, the lawyer was merely negligent because he had erroneously thought that he would play a bigger role, and would contribute to a greater degree to the client's case. *Id.* ¶ 40.

¶ 32. The Court's general discussion of the different states of mind described in the ABA Standards does not support the conclusion that a lawyer's mistaken understanding of the ethical rules concerning commingling of property lowers the presumptive sanction for improper commingling to a public reprimand. In fact, in its discussion, the Court noted:

> In the context of sanctions . . . knowing conduct does not encompass both knew or should have known. If the definition extended to constructive knowledge then "no misconduct would be negligent because rather than failing to heed a substantial risk we would always assume the lawyer should have known the substantial risk."

*Id.* ¶ 41 (quoting *In re Stansfield*, 187 P.3d 254, 263 (Wash. 2008)). The problem is, as noted above, in the context of sanctions for dealing improperly with client property, the category of violations subject to a presumptive sanction of suspension specifically *does* include violations where the lawyer knew *or should have known* that the offending conduct violated the rules.

¶ 33. I fear that the Court's holding in this case will have the unintended consequence of reducing the presumptive sanction to public reprimand in the vast majority of cases involving improper dealings with client property. I have no doubt that the vast majority of lawyers who maintain their trust accounts in a way that violates the rule against commingling do not realize that their practice violate the rules. But I can imagine a wide range of practices that we would agree a lawyer *should know* violate the rules. If we read the "should know" prong out of the description of the presumptive sanction in § 4.12, then we are essentially setting up ignorance of the applicable ethical rules as a defense

(or at least a mitigating factor) in a disciplinary proceeding arising from a violation of those rules. This approach undermines the ability of the Professional Responsibility Board and this Court to ensure compliance with the rules, and can only undermine public confidence in our effective regulation of the bar.

¶ 34. If what is driving the majority's decision is the parties' stipulation that attorney's "mental state with respect to the violation of IOLTA requirements was one of negligence," then the majority should limit its decision to that rationale. If the majority interprets this stipulation as a concession that § 4.13 (rather than § 4.12) applies,[2] then it should acknowledge that based on the rest of the record the stipulation does not appear to jibe with the relevant ABA Standards. Rather than describing the applicable law in a way that reads an important prong out of § 4.12, the majority should simply conclude that the parties essentially stipulated to a presumptive sanction that is less severe than that ordinarily required by the ABA Standards for commingling of the sort attorney committed here.

¶ 35. Although I disagree with the majority about the presumptive sanction in this case, I concur in the majority's judgment because even though suspension is the presumptive sanction in this case, the abundance of mitigating factors warrants a rare two-level sanction reduction to a private admonition. In *Farrar*, we disapproved of such a substantial reduction from the presumptive sanction of suspension on facts similar to those before us in this case. As I argued above, the distinctions between this case and *Farrar* noted by the majority — such as the substantially greater risk to client funds resulting from the lawyer's practices in *Farrar* relative to the risk in this case — have no bearing on which presumptive sanction applies to bookkeeping practices that improperly commingle personal and client funds. However, the distinctions *are* relevant to explain my departure from *Farrar* with respect to the extent of mitigation from the presumptive sanction in this case. See ABA Standards § 9.32 (listing thirteen "[f]actors which may be considered in mitigation"). Most important, in this case, there was very little actual risk to client funds. *Id.* § 3.0(c)

---

[2] Although this sentence in isolation appears to represent such a concession, in the context of the stipulation as a whole, it is unclear whether the stipulation represents a concession that ABA Standard applicable to negligent violations applies rather than simply an acknowledgment that attorney made an honest mistake.

("In imposing a sanction . . . a court should consider . . . the potential or actual injury caused by the lawyer's misconduct . . . ."). Moreover, upon realizing that his handling of client funds had violated the rules, attorney's aggressive and proactive self-scrutiny and disclosure in this case were exemplary. *Id.* § 9.32(d) (noting that "timely good faith effort to make restitution or to rectify consequences of misconduct" is mitigating factor). Our sanction structure ought to create an incentive for members of the Bar to emulate his self-examination. Given these considerations, a two-level reduction — from the presumptive sanction of suspension to private admonition — is warranted.

¶ 36. For these reasons, although I do not join the majority's analysis, I concur in the result, and agree that private admonition is the appropriate sanction in this case.

¶ 37. I am authorized to state that Judge Durkin joins in this concurrence.