# ENTRY ORDER

## 2017 VT 8

## SUPREME COURT DOCKET NO. 2017-007

## JANUARY TERM, 2017

| In re PRB No. 2013-145 | } | APPEALED FROM: |
| | } | |
| | } | Professional Responsibility Board |
| | } | |
| | } | DOCKET NO.  2013-145 |

In the above-entitled cause, the Clerk will enter:

¶ 1.    Upon review of the hearing panel decision in this matter, the Court concludes as follows: The decision presents a well-reasoned discussion and resolution of a problem common in legal practice, particularly for small firms and solo practitioners.  Accordingly, the Court orders review of the decision on its own motion, adopts the hearing panel decision in its entirety as a final order of this Court, waives briefing and oral argument, and orders that the decision be published in the Vermont Reports.

## STATE OF VERMONT
## PROFESSIONAL RESPONSIBILITY BOARD

In Re: PRB File No. 2013-145

## Decision No. <u>203</u>

This disciplinary matter came on for hearing on the merits on July 19, 2016, before Hearing

Panel No. 9, Karl C. Anderson, Esq., Chair, Kate Thomas, Esq. and Mr. William N. Scranton.

Present were Kimberly Rubin, Esq., Disciplinary Counsel, Respondent, and Edward Fitzpatrick,

Esq., counsel for Respondent.[1]

---

[1]  A witness was present and sworn in as a witness, but never asked to testify in this matter.

Based upon the parties' *Stipulation of Facts*, the testimony and evidence adduced at hearing, and the parties' respective memoranda of law, the Hearing Panel hereby admonishes Respondent for violations of Rules 1.15A, 1.15A(a) and 1.15A(a)(2) of the Vermont Rules of Professional Conduct, for failing to safeguard client funds held in trust. Specifically, Respondent did not perform timely reconciliations of his client trust account and failed to keep accurate records of client funds held in trust.

**The Issues Presented**

The parties stipulated that Respondent violated Rules 1.15A, 1.15A(a) and 1.15A(a)(2) of the Vermont Rules of Professional Conduct by failing to safeguard client funds. Respondent admits that he did not timely reconcile his IOLTA account and did not keep accurate records of the client funds he held in trust. Disciplinary Counsel also charged Respondent with violating Rules 1.15(a)(1) and 1.15(d) of the Rules of Professional Conduct, alleging Respondent commingled Respondent's funds with client funds in his client IOLTA account. Respondent denied the charge that he violated Rules 1.15(a)(1) and 1.15(d). The parties did not stipulate to the sanction to be imposed. Disciplinary Counsel asked the Hearing Panel to issue a public reprimand for all violations. Respondent argued that private admonition was the appropriate sanction in this case. The parties jointly requested a hearing on the merits of the contested charges and on the issue of sanctions.

**Findings of Fact**

The parties have stipulated to many of the relevant facts in this case. The Hearing Panel accepts the parties' stipulated facts and makes the following findings.

Respondent is an attorney licensed to practice law in the State of Vermont. Respondent was admitted to the Vermont Bar in 1992. Respondent and his law partner maintain a private law

practice in Vermont [hereinafter the Firm]. During his years of practice, Respondent regularly handled real estate transactions for buyers and sellers.

In June 2012, Disciplinary Counsel selected Respondent's IOLTA account for a compliance examination by the Professional Responsibility's Program. Compliance examinations are part of the Program's trust account oversight program.

Between 2003 and 2007, Respondent's Firm retained an independent contractor to serve as the Firm's bookkeeper. The bookkeeper was responsible for maintaining the Firm's IOLTA account as part of the bookkeeper's responsibilities. In 2007, Respondent's Firm assigned the bookkeeping duties to one of its employees, paying the employee a monthly stipend for the work. The employee was responsible for maintaining the Firm's IOLTA account, among other tasks.

At all times relevant to this disciplinary matter, Respondent's Firm has used Quicken commercial bookkeeping software for financial record keeping. Respondent's Firm used Quicken to record its deposits into, and withdrawals from, the Firm's IOLTA account.

Shortly after the Firm was notified that Disciplinary Counsel would be conducting a compliance examination of the Firm's trust accounts, the Firm's bookkeeper suddenly quit the Firm. Respondent reviewed the Firm's IOLTA account records and discovered the IOLTA account had not been reconciled for six months. The employee's sudden departure caused Respondent significant concern, so Respondent hired an accountant to audit the Firm's IOLTA account from 2007 to the present to determine if there were any improper transactions. Respondent's independent audit commenced approximately three months before Disciplinary Counsel performed her compliance exam on September 19, 2012. Respondent also retained legal counsel to assist Respondent with his investigation. Part of counsel's responsibilities included

assisting Respondent with implementing accounting procedures that would bring, and keep, the Firm's accounting practices in compliance with the Rules of Professional Conduct.

Disciplinary Counsel retained a Certified Public Accountant ("CPA") to perform the compliance examination. The CPA was tasked with determining if Respondent's IOLTA account was in compliance with Rules 1.15 through 1.15B of the Vermont Rules of Professional Conduct, for the period of October 1, 2009 through September 19, 2012. Upon completing the examination, the CPA provided a written report to Disciplinary Counsel on January 3, 2013. (The Auditor's report is dated September 19, 2012, the date of the audit, which is a common practice for auditors.)

The CPA reviewed only one bank statement for Respondent's IOLTA account, being the statement covering the period of January 1, 2012 through January 31, 2012. The CPA found the following compliance issues:

1. Transactions entered in Quicken for the IOLTA account were not categorized by client or matter, making it impossible to sort and find transactions by client or to determine client balances. (A lawyer shall maintain an individual record for each client or person whose funds are held in a trust account, showing all receipts, disbursements and a running account balance by client, is required by V.R.P.C. Rule 1.15A(a)(2).)

2. The Quicken register showed a recurring balance of approximately $32,000 in the IOLTA account, but it was impossible to ascertain if this figure represented the correct balance, or to whom the funds belonged. (A lawyer shall maintain an accounting system showing all receipts and the nature of disbursements, and a record of the same of each client. V.R.P.C. Rules 1.15A(a)(1) & (2).)

3. As of September 19, 2012, the most recent reconciliation of the IOLTA account, comparing the Quicken transaction entries and running balance against a bank statement,

4

was January 31, 2012. (Regular reconciliation of the trust account balance is an integral component of a trust accounting system required by V.R.P.C. Rule 1.15A(a).)

4. The January 31, 2012 bank reconciliation identified approximately $75,000 of stale, outstanding checks, dating back as far as 2003. Many of these checks were payable to the Firm. (Prompt delivery of trust funds, including remittances to the State Treasurer of "unclaimed property" is required by V.R.P.C. Rule 1.15(d); accumulation of a lawyer's own funds in a trust account is prohibited by V.R.P.C. Rule 1.15(b).)

The CPA's report to Disciplinary Counsel concluded that the Firm was not in compliance with Rules 1.15 through 1.15B of the Vermont Rules of Professional Conduct for the period of October 1, 2009 through September 19, 2012.

Based on the CPA's findings, Disciplinary Counsel opened her own investigation into Respondent's trust account practices. Following her investigation, Disciplinary Counsel concluded that Respondent's IOLTA account was not in compliance with the Rules of Professional Conduct in four specific ways:

1. Maintaining approximately $75,000 of stale outstanding IOLTA checks, dating as far back as 2003, constituted violations of Rules 1.15(a)(1) and 1.15(d) of the Rules of Professional Conduct;

2. Having an IOLTA account running balance of approximately $32,000 that could not be verified or accounted for constituted a violation of Rule 1.15A(a);

3. Failing to reconcile the trust account for nine months constituted a violation of Rule 1.15A(a); and

4. Failing to categorize trust account entries by client or matter constituted a violation of Rule 1.15A(a)(2).

5

Once the CPA examination was complete, Respondent took the initiative to retain a CPA, at Respondent's sole expense, to assist Respondent in transforming his trust accounting practices so that Respondent was in compliance with the Rules of Professional Conduct. Respondent implemented his CPA's recommendations.

Respondent acknowledged that his Firm did not reconcile its IOLTA account for approximately 9 months. Respondent admitted that, prior to the compliance examination, Respondent was not aware that the Rules of Professional Conduct required Respondent to maintain a record of each client's IOLTA funds, including all deposits, disbursements, and running balances. Respondent rectified the error, taking advantage of all of the functions his Quicken software provides. Respondent is now able to identify the source of all receipts and disbursements recorded in the Firm's IOLTA account, and has categorized all transactions by client.

As to the approximately $75,000 in stale outstanding checks, Respondent determined that these checks were related to real estate transactions Respondent handled. (During a real estate purchase, the buyer's lawyer issues IOLTA checks to pay closing costs, including an IOLTA check to a title insurance company to pay the title insurance premium and another IOLTA check payable to the lawyer for the lawyer's title insurance commission.) Respondent investigated these uncashed checks and determined that $74,714.00 was payable to the Firm for title insurance commissions. These checks were deposited or cashed by Respondent's Firm between February 1, 2012 and September 19, 2012, the latter being the date of the compliance examination.

With respect to running balance of approximately $32,000.00, Respondent's was able to resolve the issue. Respondent's accountant found a few instances of transposed numbers and a double deposit entry that erroneously inflated the balance of Respondent's IOLTA account. After

correcting the IOLTA account entries, the balance accurately represented client retainers held for the payment of attorney fees once those fees are earned.

To bring the IOLTA account into compliance with the Rules, Respondent reissued checks and submitted the remaining funds, being $560.00, to the Voluntary Compliance Program, Unclaimed Property Division of the Office of State Treasurer. Respondent admitted he was unaware of the Rule requiring lawyers to file an annual unclaimed property report with the State.

To assure that Respondent timely collects the title insurance commissions paid from his IOLTA account, Respondent entered into a service agreement with his title insurance company. Under the agreement, Respondent pays the company a modest fee for the title company to perform post-closing title services for Respondent. With the title company handling some post-closing tasks, Respondent's lengthy backlog of unfinished title services was addressed, and, going forward, the services will assure Respondent remains current on his post-closing obligations.

Respondent admits that he and is Firm failed to reconcile his IOLTA account for nine months. Respondent admits that his Firm fell behind in reconciling the IOLTA account due, in part, to the sudden departure of the employee responsible for performing the account reconciliations.

Respondent never directly deposited his own funds into the Firm's IOLTA account, nor did Respondent use the IOLTA account for his own personal matters. Respondent's clients' funds were never improperly used or in jeopardy of loss. There is no evidence that Respondent's IOLTA account was ever overdrawn, or that any client or third party was injured as a result of the conduct described above.

The parties do not agree on the issue of whether Respondent permitted his funds to accumulate, and commingle with client funds, in the IOLTA account. Disciplinary Counsel asserts

7

that Respondent did not timely cash the IOLTA checks made payable to Respondent for his real estate and title services. Disciplinary Counsel points to the fact that many of these IOLTA checks were five to nine years old when finally deposited. Disciplinary Counsel also questions the timing of Respondent's deposits, as the deposits were made shortly before the CPA's compliance examination. Disciplinary Counsel asks the Hearing Panel to infer Respondent was accumulating his own funds in his IOLTA account because the IOLTA checks were years old and only deposited a short time before the IOLTA account was audited.

Respondent responds that he timely recorded all of the documents required following a real estate closing. Respondent asserts that the IOLTA checks made payable to him at the time of a real estate closing were not earned as of the time of closing. Respondent states that he had tasks to complete post-closing before Respondent had earned his fee or commission and entitled to deposit or cash the IOLTA checks. Some of these post-closing tasks included recording deeds, mortgages and discharges in the municipal land records. Respondent stated that, at the end of a real estate closing, Respondent would put the IOLTA check for his fee and commission in his client's file and then deposit or cash the IOLTA check once all the post-closing work was completed. Respondent alleged that it could take a long time to complete his post-closing duties.

Respondent and Disciplinary Counsel requested a hearing on merits on the question of whether Respondent violated Rules 1.15(a)(1) & (d). The parties ask the Hearing Panel to determine if Respondent violated Rules 1.15(a)(1) & (d) by Respondent failing to take timely payment of his fees and commissions from his IOLTA account, thereby allowing Respondent's funds to accumulate and commingle with client funds in the IOLTA account.

8

**Motion to Amend Charge**

One matter must be addressed prior to turning to the merits of the case. During the hearing, Disciplinary Counsel moved to amend the disciplinary charges to include a charge of violating Rule 1.3, failure to exercise due diligence. Disciplinary Counsel argued that the Hearing Panel had the legal authority to permit amendment of the disciplinary charges during the course of a hearing when justice so requires. Respondent objected to amending the charge, arguing that amending the charge during the hearing was prejudicial and precluded Respondent from preparing and presenting a defense to the charge.

Disciplinary matters are governed by the Vermont Rules of Civil Procedure. A.O. 9, Rule 16(B). V.R.C.P. Rule 15(a) provides: "A party may amend the party's pleading . . . by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." V.R.C.P. Rule 15(a). In *Bevins v. King*, the Vermont Supreme Court outlined the standard to be applied when considering a motion to amend pleadings:

> Both the Vermont rules of civil procedure and the common law tradition of this state encourage liberality in allowing amendments to pleadings where there is no prejudice to the other party. *Tracy v. Vinton Motors, Inc.*, 130 Vt. 512, 296 A.2d 269 (1972); V.R.C.P. 15. When permission of the court to amend a pleading is required, it "shall be freely given when justice so requires." V.R.C.P. 15(a). **Such a motion is addressed to the discretion of the trial court**, and its action thereon is not reviewable, unless it appears that the court withheld or abused its discretion. **When there is no prejudice** to the objecting party, and when the proposed amendment is not obviously frivolous nor made as a dilatory maneuver in bad faith, **it is an abuse of discretion to deny the motion**. . . .
>
> The principal reasons underlying the liberal amendment policy are (1) to provide maximum opportunity for each claim to be decided on its merits rather than on a procedural technicality, (2) to give notice of the nature of the claim or defense, and (3) to enable a party to assert matters that were overlooked or unknown to him at an earlier stage in the proceedings. 6 C. Wright & A. Miller, *Federal Practice & Procedure* §§ 1471, 1473 (1971). The rules go so far as

9

to permit amendments during trial and after judgment, provided the opposing party is unable to show prejudice. V.R.C.P. 15(b).

*Bevins v. King*, 143 Vt. 252, 254-55, 465 A.2d 282, 283 (1983) (*emphasis added*) (*some citations omitted*). If an amendment is granted during trial, a party may be entitled to a continuance to have an opportunity to prepare a response to the amended pleading. *See Shahi v. Madden*, 2008 VT 25, ¶ 7, 183 Vt. 320, 949 A.2d 1022 (*citing Perkins v. Windsor Hosp. Corp.*, 142 Vt. 305, 314, 455 A.2d 810, 816 (1982) ("Any surprise engendered by allowance of the proposed amendment could have been eliminated by requesting a continuance of the trial.")). In ruling on a motion to amend, the Hearing Panel must be mindful of the parties' right [to] a "just and expeditious disposition of their case." *First National Bank v. Silberdick*, 146 Vt. 209, 211-12 (1985) (court properly denied motion to amend when the facts and theory underlying defendant's estoppel defense, although undisclosed to plaintiff, were available to defendant for months before trial, and defendant's motion amounted to an unjustifiable and deliberate delay) (*citing* 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1488, at 444 (1971)); *see also* See *Stratton v. Steele*, 144 Vt. 31, 36 (1984) ("'there are limits to the liberal application of these rules; motions to amend may be denied if they have been unreasonably delayed, causing prejudice to the opposing party.'").

To rule on Disciplinary Counsel's motion, the motion must be placed in context. Disciplinary Counsel was questioning Respondent regarding Stipulated Exhibits B and C. Exhibit B is a thirteen page list of uncleared checks that were written on Respondent's IOLTA account between May 2003 and January 2012. Exhibit C is a one page list of checks with the date each check was cashed. The checks listed in Exhibits B and C were payable to Respondent's Firm and to others. During examination, Disciplinary Counsel was able to show that months and years passed between the time an IOLTA check was written and later cashed. Disciplinary Counsel asked Respondent to explain why Respondent held the IOLTA checks made payable to him so

10

long, sometimes as long as 9 years. Respondent answered that he could not recall and would need to review the file to determine why he did not cash his IOLTA payment. Respondent responded that he would not cash or deposit the IOLTA checks payable to him until the fee or commission was actually earned. Respondent stated that if he did not cash an IOLTA check for his fee, then he must assume that he had not yet earned the fee. Disciplinary Counsel and Respondent did not have any of the files associated with the IOLTA checks present during the hearing. Accordingly, Disciplinary Counsel did not have any evidence to support the inference that Respondent failed to timely cash IOLTA checks payable to him, thereby permitting his funds to accumulate and commingle with client funds in the IOLTA account.

Not having the evidence necessary to prove commingling, Disciplinary Counsel asked to amend the charge to include violation of Rule 1.3, failure to exercise due diligence. Disciplinary Counsel argued that, taking Respondent at his word, Respondent took years, sometimes as many as 5 and 9 years, for Respondent to complete his post-closing duties. Disciplinary Counsel argued that Respondent was not diligent in completing his real estate duties.

Respondent argued that Respondent was completely unprepared to meet the new charge. As of the date of hearing, Respondent had not reviewed his real estate files and was unprepared to explain why, in any particular case, it took Respondent so long to complete his post-closing tasks so he could collect his fee and/or title insurance commission from the IOLTA account. Respondent argued that amending the charge without granting Respondent an opportunity to prepare and meet the charge was prejudicial.

Disciplinary Counsel responded that Respondent was aware that a charge of violating Rule 1.3 was a possibility. Disciplinary Counsel informed the Hearing Panel that the parties had discussed Rule 1.3 some time ago, and Disciplinary Counsel warned Respondent that Disciplinary

11

a charge of violating Rule 1.3 was a possibility. For reasons not articulated at the hearing, Disciplinary Counsel chose not to issue a charge for violation of Rule 1.3.

The Hearing Panel denied Disciplinary Counsel's motion to amend the charges. Amending the charges and going forward with the hearing was prejudicial to Respondent, as it would deny Respondent a fair hearing. From the PRB Docket number, it appears that this case has been pending since 2013. Disciplinary Counsel began investigating this case in September 2012, and received its CPA's report in January 2013. Disciplinary Counsel has known and understood the facts of this case for months prior to the hearing. Disciplinary Counsel admits that she considered a charge of violation Rule 1.3 some time ago, but elected not to bring the charge. This is not an instance of facts or legal issues that were overlooked or unknown to Disciplinary Counsel. Respondent is entitled to a just and expeditious disposition of his case. Accordingly, Disciplinary Counsel's motion was denied.

## Conclusions of Law

### Applicable Legal Standards

"In general, the [Rules of Professional Conduct] are 'intended to protect the public from persons unfit to serve as attorneys and to maintain public confidence in the bar.'" *In re PRB Docket No. 2006-167*, 2007 VT 50, ¶¶ 9-10, 181 Vt. 625, 626-27, 925 A.2d 1026, 1028-29 (citing *In re Berk*, 157 Vt. 524, 532, 602 A.2d 946, 950 (1991). The Hearing Panel's findings as to each element of a charge of professional misconduct must be supported by clear and convincing evidence. A.O. 9, Rule 16(C); *In re McCarty*, 2013 VT 47, ¶ 12, 194 Vt. 109, 75 A.3d 589 ("All formal charges of misconduct 'shall be established by clear and convincing evidence.'"). "The burden of proof in proceedings seeking discipline or transfer to disability inactive status is on disciplinary counsel." A.O. 9, Rule 16(D).

If a violation of the Rules of Professional Conduct is proved by clear and convincing evidence, one or more sanctions may be imposed. A.O. 9, Rule 8. The purpose of sanctions is not "to punish attorneys, but rather to protect the public from harm and to maintain confidence in our legal institutions by deterring future misconduct." *In re Obregon*, 2016 VT 32, ¶ 19, ___ Vt. ___, 145 A.3d 226 (*citing In re Hunter*, 167 Vt. 219, 226, 704 A.2d 1154, 1158 (1997)); *see also In re Neisner*, 2010 VT 102, ¶ 24, 189 Vt. 145, 16 A.3d 587.

**Violation of Rules of Professional Conduct**

**Rules 1.15A, 1.15A(a) and 1.15A(a)(2)**

The parties concur that Respondent violated Rules 1.15A, 1.15A(a) and 1.15A(a)(2) of the Vermont Rules of Professional Conduct. The facts establish by clear and convincing evidence that Respondent violated Rules 1.15A, 1.15A(a) and 1.15A(a)(2), as set forth below.

Rule 1.15A of the Rules of Professional Conduct provides, in relevant part, the following:

> (a) Every lawyer or law firm holding funds of clients or third persons in connection with a representation . . . shall hold such funds in one or more accounts in a financial institution. An account in which funds are held that are in the lawyer's possession as a result of a representation in a lawyer-client relationship shall be clearly identified as a "trust" account. . . . The lawyer shall take all steps necessary to inform the financial institution of the purpose and identity of all accounts maintained as required in this rule. The lawyer or law firm shall maintain an accounting system for all such accounts that shall include, at a minimum, the following features:
>
> > (1) a system showing all receipts and disbursements from the account or accounts with appropriate entries identifying the source of the receipts and the nature of the disbursements;
> >
> > (2) a record for each client or person for whom property is held, which shall show all receipts and disbursements and carry a running account balance;

(3)   records documenting timely notice to each client or person of all receipts and disbursements from the account or accounts; and

(4)   single source for identification of all accounts maintained as required in this rule.

In this matter, Respondent violated Rules 1.15A and 1.15(a) by failing to maintain proper records for his IOLTA account. Respondent failed to reconcile his trust account for nine months. Respondent's Quicken software showed a recurring balance in the IOLTA account of approximately $32,000. Respondent's accountant discovered that the balance was incorrect because errors were made entering transactions into the accounting program. Respondent also failed to categorize IOLTA transactions by client or matter, making it impossible for Respondent to account for a client's funds. For example, Respondent could not track or obtain a report showing all deposits, disbursements or running balances for a particular client. Finally, Respondent had approximately $75,000 in stale outstanding IOLTA checks by the beginning of 2012. Some of the checks were dating as far back as 2003. Once aware of these outstanding checks, and with the assistance of an accountant, Respondent was able to identify $74,714.00 in fees and/or commissions Respondent could collect from his IOLTA account.

All of these facts establish by clear and convincing evidence that Respondent failed to comply with the trust account rules provided in Rules 1.15A, 1.15A(a) and 1.15A(a)(2).

**Rules 1.15(a)(1) & 1.15(d)**

Rules 1.15(a)(1) & (d) of the Rules of Professional Conduct provide, in relevant part:

(a)(1)  A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in accordance with Rules 1.15A and B. . . . **Complete records of such account funds and other property shall be kept by the lawyer** and shall be preserved for a period of six years after termination of the representation. . . .

14

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, **a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.**

V.R.P.C. Rule 1.15(a)(1) & (d).

Disciplinary Counsel argues that Respondent violated these Rules by failing to cash $74,714.00 in IOLTA checks that were payable to Respondent, some of which were dated as far back as 2003. At best, Disciplinary Counsel has proved the date on which these IOLTA checks were written, and the dates on which Respondent cashed or deposited these IOLTA checks. Disciplinary Counsel has also established that there were long time intervals between the date these IOLTA checks were written and the date Respondent cashed or deposited these IOLTA checks. Disciplinary Counsel has also shown that Respondent cashed or deposited many of these IOLTA checks shortly before the compliance examination. Disciplinary Counsel has not presented any evidence showing when Respondent earned the fees or commissions associated with any of these stale, outstanding IOLTA checks. Disciplinary Counsel has not presented any evidence showing length of time that passed between the day Respondent earned his fees and the day Respondent cashed the IOLTA check paying those fees.

Respondent agrees that the Rules require a lawyer to deposit legal fees and expenses paid in advance into the lawyer's IOLTA account. Rule 1.15(c). Respondent correctly argues, however, that a lawyer may only withdraw funds from a client's IOLTA account when the lawyer has earned the fee or incurred the expense. Rule 1.15(c).

15

The parties agree that once a lawyer earns a fee, or incurs an expense, the lawyer must promptly pay the fee or expense from the client's IOLTA account. Rule 1.15(d). Failure to promptly pay fees or expenses from an IOLTA account may constitute a violation of Rule 1.15(d).

Here, Disciplinary Counsel bears the burden of proving, by clear and convincing evidence, that Respondent earned his fees but neglected to promptly collect those fees by cashing the IOLTA checks written to pay those fees. A.O. 9, Rule 16(D). The long time intervals between Respondent writing an IOLTA check and Respondent cashing the check creates an inference that Respondent neglected the duty of prompt payment, Rule 1.15(d), and allowed his funds to accumulate and commingle with client funds in the IOLTA account. The fact that Respondent cashed many of these stale outstanding IOLTA checks shortly before the compliance examination also supports an inference that Respondent rushed to get his accounts in order prior to the IOLTA account audit. These inferences, however, do not meet the clear and convincing evidence standard. A.O. 9, Rule 16(C). Disciplinary Counsel failed to prove Respondent earned the fees payable from his IOLTA account and then neglected to collect those fees from the IOLTA account promptly.

## C. Applicability of the *ABA Standards for Imposing Lawyer Sanctions*

The Vermont Supreme Court has ruled:

> When sanctioning attorney misconduct, we have adopted the *ABA Standards for Imposing Lawyer Discipline* which requires us to weigh the duty violated, the attorney's mental state, the actual or potential injury caused by the misconduct, and the existence of aggravating or mitigating factors.

*In re Andres*, 2004 VT 71, ¶ 14, 177 Vt. 511, 857 A.2d 803 (mem.); *accord In re Blais*, 174 Vt. 628, 817 A.2d 1266 (2002) (mem.). Accordingly, the Hearing Panel employed the *ABA Standards* as a tool to determine the appropriate sanction to impose in Respondent's case.

### 1. The Duty Violated

16

A lawyer owes clients the duty of preserving the clients' property. *ABA Standards* § 4.1. As described above, Respondent violated §4.1 when Respondent failed to comply with Rules 1.15A, 1.15A(a) and 1.15A(a)(2) of the Vermont Rules of Professional Conduct.

## Mental State

The second factor to be considered under the *ABA Standards* is the lawyer's mental state. *ABA Standards* § 3.0. The *ABA Standards* explain the relevant mental states as follows:

> The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct but without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence.

*ABA Standards, Theoretical Framework* § II, at 6. The *ABA Standards* define the term "negligence" as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." *ABA Standards IV, Definitions.*

Respondent's mental state was one of negligence. Respondent acted negligently when he failed to set up his Quicken accounting system in accordance with the Rules of Professional Conduct. For example, Respondent did not use Quicken to track IOLTA transactions by client or matter. Respondent was negligent when he failed to perform timely reconciliations of the IOLTA account. Respondent was also negligent when he failed to correct entry errors that led to an incorrect running balance of approximately $32,000. The Firm assigned the task of performing the bookkeeping tasks to an independent contractor, and then an employee. Respondent, however, was responsible for ensuring the trust account was administered according to the Rules of Professional Responsibility, and he failed to do so.

17

**Injury & Potential Injury**

The *ABA Standards* next require review of the injury and potential injury that may have resulted from the attorney's professional misconduct. In Respondent's case there was no actual injury to any client. Respondent's clients' IOLTA funds were never improperly used or in jeopardy. Moreover, there is no evidence that any client or third party was injured as a result of the Respondent's violations of the Rules. When a lawyer's IOLTA account is not in compliance with the Rules, properly maintained, and regularly reconciled there is the potential for injury.

**4. Presumptive Sanction under the *ABA Standards***

Section 4.1 of the *ABA Standards* describes the sanctions that apply when a lawyer fails to preserve client property. When the lawyer's mental state is one of negligence, the *ABA Standards* indicate the presumptive sanctions are reprimand or admonition. The *ABA Standards* provide:

> 4.13 Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.

> 4.14 Admonition is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client.

In Respondent's case, the evidence establishes there was no actual injury, but there was the potential for injury. Here the presumptive sanction is reprimand due to the potential for injury.

18

## Aggravating & Mitigating Factors

Having established the presumptive sanction of reprimand, the Hearing Panel must consider both aggravating and mitigating circumstances, as each may warrant a sanction greater or lesser than the presumptive sanction.

### Aggravating Factors

Section 9.22 of the *ABA Standards* sets forth a list of aggravating factors that the Hearing Panel should consider. The parties have stipulated that there is one aggravating factor present in this case. Respondent has substantial experience in the practice of law, having practiced law in Vermont for more than 23 years.

### Mitigating Factors

Section 9.32 of the *ABA Standards* sets forth a list of mitigating factors, with four being present in Respondent's case. Respondent has no record of prior discipline. *ABA Standards* §9.32(a). Respondent did not act from a dishonest or selfish motive. *ABA Standards* §9.32(b). Respondent made a timely effort to rectify his trust account violations and bring it into compliance with the Rules. Respondent retained an accountant and attorney, at his own expense, to address the accounting issues. *ABA Standards* §9.32(d). Respondent has been cooperative throughout the disciplinary proceedings. *ABA Standards* §9.32(e).

### Mitigating Factors Outweigh Aggravating Factors

The presumptive sanction in this matter is a public reprimand. There are, however, substantial mitigating factors that outweigh the one aggravating factor present in this case.

There was no actual injury to any client in this case, nor has Disciplinary Counsel proved that Respondent's negligence resulted in commingling of Respondent's funds with client funds. Respondent's accounting practices were sloppy, both in the way Respondent set up his Quicken

accounting system, and in the way Respondent supervised the account. To his credit, Respondent promptly retained an accountant and an attorney to assist Respondent in bringing his accounts into full compliance with the Rules. The Hearing Panel gives significant weight to the lack of actual harm and Respondent's concerted effort to bring his IOLTA account into compliance. *See In re PRB Docket No. 2012.155* (attorney's extensive efforts to address accounting errors given significant weight by court when determining the appropriate sanction).

Disciplinary Counsel acknowledges that Respondent has brought his trust accounts and accounting procedures into compliance with the Rules of Professional Conduct. Disciplinary Counsel argues that a public reprimand is appropriate in this case. Disciplinary Counsel, however, does not request a period of probation. It would appear that Disciplinary Counsel is satisfied with the corrections Respondent has made to his accounting system and practices.

Respondent argues that private admonition is the appropriate sanction. The Hearing Panel finds the mitigating factors and precedent support Respondent's argument.

In one case, a lawyer kept over $124,000 of title insurance commissions owed her in a trust account for more than seven months. *In re PRB Docket No. 2013.160*, 2015 VT 54, 199 Vt. 637, 118 A.3d 523 (mem.). The lawyer was using her trust account like a savings account, as she planned to use the commissions to pay her malpractice insurance premium. *Id*. The Vermont Supreme Court concluded a private admonition was the appropriate sanction. Unlike Respondent's case, *In re PRB No. 2013.160* involved a clear case of commingling.

In *In re: PRB Docket No. 2014.141, Decision #175*, the lawyer admitted having a number of trust account checks, dating back several years, that were not cashed. *Id*. The Board noted the "Respondent's failure was due to negligence, not to any intentional violation of the Rules. She believed that her accounting system was adequate, when in fact it was not." *Id*. The Board

20

imposed a private admonition, stating: "Admonition is consistent with both the *ABA Standards* and Vermont case law." *Id.*; *see also In Re PRB Docket No. 2013.153,* 2014 VT 35, 196 Vt. 633, 96 A.3d 468 (mem.); *In Re: Decision # 120, PRB File No. 2008.104*; *In re: Decision # 115, PRB File No. 2007.244*; *In Re: Decision #163, PRB File No. 2013.049*.

Based upon the substantial mitigating factors present in Respondent's case, the Hearing Panel concludes that the appropriate sanction in Respondent's case is a private admonition.

**ORDER**

BASED UPON the foregoing findings of fact and conclusions of law, Respondent is admonished for violating the Vermont Rules of Professional Conduct for failing establish, maintain and manage his IOLTA account as required by Rules 1.15A, 1.15A(a) and 1.15A(a)(2).

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

☒ Publish

_____
John A. Dooley, Associate Justice

☐ Do Not Publish

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice